**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EMILY GALLAGHER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CANTON, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:25-cv-00878<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge Reuben J. Sheperd |

**OPINION AND ORDER**

Plaintiff Emily Gallagher brings this lawsuit against Defendants City of Canton and various police officers for various federal and State-law claims arising from an incident involving the police's use of a canine. Defendants move for partial judgment on the pleadings. For the reasons that follow, the Court **GRANTS IN PART** Defendants' motion for partial judgment on the pleadings.

**STATEMENT OF FACTS**

Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, as the non-moving party, the complaint alleges the following facts.

On or about May 1, 2024, Officers Bryan Jeffries, Jennifer Henderson, and Anthony Ankrom entered a house with a canine. (ECF No. 1, ¶¶ 2–3, PageID #2.) At the time, Emily Gallagher was asleep in an upstairs bed. (*Id.*, ¶ 14, PageID #4.) Plaintiff alleges that, when Officer Jeffries "unleashed" the canine on her, "[Officer] Jeffries was not in danger, nor was anyone else." (*Id.*, ¶¶ 14 & 16, PageID #4.)

Plaintiff alleges that she was "not trying to flee or otherwise resist arrest" (*id.*, ¶ 17, PageID #4) and that the crime which Officer Jeffries was investigating did not necessitate the use of "potentially deadly force" (*id.*, ¶ 18, PageID #5). Also, Plaintiff alleges that Officer Jeffries failed to warn her before deploying the canine. (*Id.*, ¶ 29, PageID #6.)

The canine bit Ms. Gallagher and "violently wrenched her hand and wrist around" for an unspecified amount of time "which caused her significant pain, fear, and injury." (*Id.*, ¶ 15, PageID #4.) After Officer Jeffries attempted and failed to regain control of the canine, he used a "tool to detach [the canine's] mouth from [Ms. Gallagher's] wrist." (*Id.*, ¶ 19, PageID #5.) Ms. Gallagher was handcuffed and charged in State court with "numerous felonies and misdemeanors including, *inter alia*, resisting arrest." (*Id.*, ¶ 20, PageID #5.) All charges were dropped before trial. (*Id.*)

Plaintiff alleges that the officers "jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, misleading, and incomplete versions of the events to their superiors" to "cover up their misconduct." (*Id.*, ¶ 21, PageID #5; *see also id.*, ¶ 22, PageID #5.)

As a direct and proximate result of the officers' actions, Plaintiff alleges that she suffered physical injuries, a variety of emotional damages, and "loss of liberty and costs." (*Id.*, ¶¶ 24–25, PageID #5.) Plaintiff alleges that she "will continue to suffer from and incur the same in the indefinite future." (*Id.*, ¶ 25, PageID #5.)

## STATEMENT OF THE CASE

Plaintiff Emily Gallagher sued Defendants City of Canton, Officer Jeffries, Officer Henderson, Officer Ankrom, and two "John Doe" K9 handlers for a variety of federal and State-law claims. (ECF No. 1.) She brings federal claims for excessive force, malicious prosecution, and *Monell* liability under Section 1983 as well as State-law claims for malicious prosecution, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. (*Id.*, ¶¶ 27–79, PageID #5–13.)

Defendants move for partial judgment on the pleadings on Plaintiff's federal claims for excessive force and malicious prosecution and State-law claims for malicious prosecution and negligent infliction of emotional distress. (ECF No. 16, PageID #87.)

## ANALYSIS

"The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). Rule 12(c) provides that, once "the pleadings are closed" a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)); *see also Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016). On a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). "In other words, judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law." *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021). In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at 236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

While "the court's decision rests primarily upon the allegations of the complaint[,]" "exhibits attached to the complaint may also be taken into account." *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 602 (N.D. Ohio 2017) (citation modified). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Bates*, 958 F.3d at 480 (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

## I. Body-Worn Camera Videos

In support of their motion for partial judgment on the pleadings, Defendants made body-worn camera videos from Officers Jeffries, Ankrom, and Eckelberry from

the incident part of the record. (ECF No. 17.) Officers Jeffries and Ankrom are Defendants in this lawsuit. Officer Eckleberry is not.

"In the motion to dismiss context, we have consistently held that we may only consider the video footage over the pleadings when the videos are clear and blatantly contradict or utterly discredit the plaintiff's version of events.'" *Hodges v. City of Grand Rapids*, 139 F.4th 495, 506 (6th Cir. 2025) (cleaned up) (quoting *Saalim v. Walmart Inc.*, 97 F.4th 955, 1002 (6th Cir. 2024) (quoting *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022))). "Otherwise, we must accept the plaintiff's version as true." *Bell*, 37 F.4th at 364 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "This all makes sense" because, even at the pleadings stage, "if the indisputable video evidence contradicts [plaintiff's] pleadings, his allegations are implausible." *Id.* (citing *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)).

Accordingly, the Court construes the body-worn camera videos in the light most favorable to Plaintiff and considers them only where the videos are clear and blatantly contradict or utterly discredit Plaintiff's version of events.

## II. Federal Claims

"Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law." *Zorn v. Linton*, 607 U.S. 569, 571–72 (2026) (per curiam) (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). In evaluating a claim of qualified immunity, the Sixth Circuit directs a district court to undertake two inquiries, in either order. The Court must determine whether "the facts alleged make out a violation of a constitutional right." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). Also, the Court asks if

the right at issue was clearly established at the time "such that a reasonable officer would have known that his conduct violated it." *Id.* (citation omitted). A right is not clearly established "if existing precedent does not place the constitutional question beyond debate." *Zorn*, 607 U.S. at 572 (cleaned up). To determine if a right is clearly established, "courts generally 'need to identify a case where an officer acting under similar circumstances. . . was held to have violated' the Constitution." *Id.* (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019) (per curiam) (cleaned up)). "The relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up)).

**II.A. Excessive Force**

Defendants argue that Officer Jeffries is entitled to qualified immunity because Plaintiff cannot show that he violated a clearly established constitutional right. (ECF No. 16, PageID #92–95.) Specifically, Defendants argue that "he did not violate clearly established law in releasing the canine to search an unfamiliar house for a potentially dangerous felon after numerous warnings." (ECF No. 19, PageID #107.) Plaintiff argues that Officer Jeffries is not entitled to qualified immunity because the use of force was excessive. (ECF No. 18, PageID #103–04.) Specifically, Plaintiff argues that "the warnings were issued when [she] was asleep in an upstairs bedroom far from the front door where the announcements were made" and because the canine "was not released until after Officer Jeffries knew [she] was asleep and without additional warnings or attempts to wake her." (*Id.*, PageID #103.)

To determine if an officer used excessive force in deploying a canine, the Sixth Circuit considers several factors, including whether the officers warned before deployment; whether the suspect was committing or fleeing a serious crime; whether the officers entered an unfamiliar location; and whether the canine was adequately trained. *See Baxter v. Bracey*, 751 F. App'x 869, 872 (6th Cir. 2018). Sixth Circuit cases for canine seizures fall along a spectrum of reasonableness spectrum. At one end of the spectrum falls *Campbell v. City of Springboro*, 700 F.3d 779 (6th Cir. 2012), where the canine seizure used excessive force because the offices failed to warn before deployment, the canine was inadequately trained, the officers were unsure of the extent of the crime, if any, and the plaintiff was not fleeing. On the other end lies *Robinette v. Barnes*, 854 F.2d 909, 914 (6th Cir. 1988), where the canine seizure was reasonable because the plaintiff ignored multiple warnings before deployment, the canine was properly trained, and the plaintiff was actively committing a burglary in an unfamiliar location, showing an "unwillingness to surrender[.]"

For cases with facts that do not align with *Campbell* or *Robinette*, the Sixth Circuit determines where the case falls on the reasonableness spectrum. In *Baxter*, 751 F. App'x at 872, the court determined that the case "looks closer to *Robinette* than *Campbell*" because, despite the plaintiff raising his hands before the bite, he fled the police after committing a serious crime, hid in an unfamiliar location, ignored multiple warnings, and was bitten by an adequately trained canine. In *Burgess v. Bowers*, 773 F. App'x 238, 247 (6th Cir. 2019), the court determined that, while the facts "do not match those in *Robinette* perfectly[,]" the force was reasonable because,

despite the canine continuing to bite the plaintiff after the officer called off the canine, he fled police after committing a misdemeanor, hid in an unfamiliar location, and ignored multiple warnings.

Against this backdrop, the parties compare the facts of the incident involving Ms. Gallagher. (ECF No. 16, PageID #94–95; ECF No. 18, PageID #103.) To determine whether the officers used excessive force in deploying the canine, the Court analyzes whether the officers warned before deployment, whether Ms. Gallagher was committing or fleeing a serious crime, whether the officers had to enter an unfamiliar location, and whether the canine was adequately trained. In doing so, the body-worn camera footage addresses each of these considerations.

**II.A.1. Evidence of Warnings**

The body-worn camera videos leave no doubt that the officers warned Ms. Gallagher before deploying the canine. Officer Eckelberry's body-worn camera footage shows that he loudly announced "Canton Police" on the house's porch as he opened the front door. (ECF No. 17, Eckleberry, 15:30–15:32.) Twenty-seven seconds later, Officer Eckleberry yelled "Canton Police" again from the open doorway (*id.*, 15:57–15:58), and an out-of-view officer (identifiable in another video as Officer Jeffries) announced "Canton Police canine, make yourself known or you're gonna get bit" (*id.*, 15:57–16:00). Five seconds after that, Officer Eckleberry announced "Canton Police canine, make your presence known or you will be bit." (*Id.*, 16:02–16:06.) Eighteen seconds later, still from the open doorway, the out-of-view officer (Officer Jeffries) shouted a final announcement, "Canton Police canine, make your presence known or you will be bit. This is your final warning." (*Id.*, 16:20–16:24.)

Officer Ankrom's body-worn camera footage captures four of the five warnings. (*See* ECF No. 17, Ankrom, 6:03–6:04 ("Canton Police."); 6:03–6:06 ("Canton Police canine, make yourself known or you're gonna get bit"); 6:08–6:12 ("Canton Police canine, make your presence known or you will be bit"); 6:26–6:30 ("Canton Police canine, make your presence known or you will be bit. This is your final warning.").) Officer Jeffries's body-worn camera does not include sound until thirty seconds into the video, but thirty-seven seconds into the footage, Officer Jeffries's final warning is audible. (*See* ECF No. 17, Jeffries, 0:35–0:39.) Both Officer Ankrom's footage and Officer Jeffries's footage show that one minute and two seconds after the last warning, Officer Jeffries enters the house with the canine (ECF No. 17, Ankrom, 7:32; ECF No. 17, Jeffries, 1:38).

Although Plaintiff alleges that the officers failed to warn before deploying the canine (ECF No. 1, ¶ 29, PageID #6), the body-worn camera footage clearly shows that the officers gave five loud warnings over the span of fifty seconds, then waited an additional one minute and two seconds before entering the house. In her opposition, Plaintiff concedes that the video footage shows the officers giving warnings. Instead, she argues instead that "[she] was not aware of [the officers'] warning because she was asleep[.]" (ECF No. 18, PageID #104.) But the officers gave sufficiently loud warnings so that anyone inside the house would hear them. In any event, the law evaluates the reasonableness of the seizure from the point of view of the responding officers, not Ms. Gallagher.

**II.A.2. Evidence of a Crime**

Plaintiff's complaint is silent as to the crime that the officers were investigating at the time of the incident. (*See* ECF No. 1.) Plaintiff does not allege why the officers were at the scene with a canine. The closest the complaint comes is the allegation that "[a]t the time [Officer] Jeffries unleashed [the canine], he was not investigating a serious crime necessitating the use of potentially deadly force." (*Id.*, ¶ 18, PageID #5.) However, the body-worn camera footage fills in this gap.

Officer Eckelberry's body-worn camera video captures the landlord explaining to the officers that he evicted the former tenant, Ms. Gallagher, the previous day; the property manager changed the locks; the property manager's crew found the front door open that morning; and the landlord believes that Ms. Gallagher came in through a window. (ECF No. 17, Eckleberry, 00:44–1:04.) After apprehending Ms. Gallagher and her boyfriend, Officer Ankrom's body-worn camera footage shows Officer Jeffries stating that "we have to charge her—both of them with B&E [breaking and entering]." (ECF No. 17, Ankrom, 15:36–15:39.) Based on this body-camera footage, the record leave no doubt that the officers reasonably suspected Ms. Gallagher of committing a serious crime at the time of deployment.

**II.A.3. Evidence of Unfamiliar Location**

Plaintiff's complaint does not allege whether the location was unfamiliar to the officers. (*See genearlly* ECF No. 1.) Plaintiff alleges that, when Officer Jeffries entered the house, he "was not in danger, nor was anyone else." (*Id.*, ¶ 16, PageID #4.) However, Officer Jeffries's body-worn camera video shows that he had to enter a multi-story house with several confined rooms and that it took him thirty-eight

seconds to search and clear the building, ultimately locating Ms. Gallagher in an upstairs bedroom. (ECF No. 17, Jeffries, 1:40–2:18.) He entered an enclosed area believing that Ms. Gallagher was inside but did not respond to the warnings. In Officer Eckelberry's body-worn camera video, the landlord explains that Ms. Gallagher has a boyfriend who "does not really live there" and that the two cars in the driveway belong to Ms. Gallagher and her boyfriend. (ECF No. 17, Eckleberry, 1:19–1:24, 2:02–2:06; 2:22–2:24.)

The Sixth Circuit has consistently held that, where an officer was "forced to explore an enclosed unfamiliar area in which he knew a man was hiding, the officer would have reasonably believed that the suspect posed a threat to the officer and to others." *Matthews v. Jones*, 35 F.3d 1046, 1048–51 (6th Cir. 1994). To determine whether force was reasonable, courts have found a location to be unfamiliar where confinement and darkness make an area likely to expose officers to ambush. *See Matthews*, 35 F.3d at 1048-51 (concluding that the police used reasonable force where the plaintiff fled into "heavy trees and undergrowth[,]" where plaintiff "could easily ambush the officers"); *Rainey v. Patton*, 534 F. App'x 391, 396 (6th Cir. 2013) (concluding that the police used excessive force where the "interaction occurred in a parking lot with an overhead streetlight, so there was no risk that [the defendant] would be 'ambushed'").

Although Plaintiff alleges that the officers were not in danger, the body-worn camera footage shows that they had to enter a confined, unfamiliar location where Ms. Gallagher—and possibly her boyfriend—was located but did not respond to the

officers' warnings. On these facts, the officers reasonably believed that they were vulnerable to a potential ambush from one or more persons in an unfamiliar location with multiple confined rooms. Accordingly, the body-worn camera footage contradicts the allegations in the compliant that the officers were not in danger, and the record shows, as a matter of law, that they were.

**II.A.4. Evidence of Training**

Plaintiff alleges that the officers "fail[ed] to train either or both the K9 unit and its hander" (ECF No. 1, ¶ 3, PageID #2) and that "[a]fter Defendant Jeffries'[s] attempts to regain control over [the canine] failed, he needed to use a tool to detach [the canine's] mouth from [her] wrist" (*id.*, ¶ 19, PageID #5). Plaintiff argues that the canine "was not sufficiently trained" because Officer Jeffries "could not order the [canine] to release" and "had to use a tool to pry its mouth open." (ECF No. 18, PageID #103.)

The body-worn camera videos do not provide clear evidence one way or another about the canine's training. Officer Jeffries's body-worn camera video shows that Officer Jeffries instructed the canine "here, here" (ECF No. 17, Jeffries, 2:16) before he and the canine entered a room with a mattress on the floor and multiple people lying on it covered with blankets. The canine jumped onto the mattress and bit one of the people, Ms. Gallagher. (*Id.*, 2:24.) Fifty-six seconds later, Officer Jeffries pulled out a tool to release the canine's bite. (*Id.*, 3:17.) About thirteen seconds later, Officer Jeffries used the tool on the canine. (*Id.*, 3:30.) After one minute and thirteen seconds, the canine released its bite on Ms. Gallagher. (*Id.*, 3:35.) The videos do not show Officer Jeffries giving any verbal commands for the canine to release.

Because the body-worn camera footage does not provide clear evidence of adequate or inadequate training, the Court construes the allegations in Plaintiff's favor and assumes that the canine was inadequately trained.

* * *

Taking these factors together on the record as a whole, notwithstanding any inadequate training of the canine, the officers were investigating Ms. Gallagher for breaking and entering, a serious crime, in an unfamiliar location at the time of deployment and gave repeated and loud warnings before deployment over the span of fifty seconds. Accordingly, on these specific facts and circumstances, the Court determines that the use of force was reasonable as a matter of law. Because this record shows that there was no constitutional violation, the Court does not need to analyze the availability of qualified immunity. Therefore, the Court **GRANTS** Defendants' motion for judgment on the pleadings on Plaintiff's federal claim for use of excessive force.

### II.B. Malicious Prosecution

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's federal claim for malicious prosecution because Plaintiff cannot demonstrate that her prosecution lacked probable cause and because Plaintiff's prosecution was not terminated in her favor. (ECF No. 16, PageID #95–96.) Plaintiff argues that she can rebut the indictment's presumption of probable cause because "Defendants prepared false and misleading reports and pursued charges to justify the use of force." (ECF No. 18, PageID #104.) Plaintiff also argues that her criminal prosecution "was terminated in her favor without a conviction." (*Id.*)

To prevail on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) "the defendant made, influenced, or participated in the decision to prosecute the plaintiff"; (2) there was no probable cause for the prosecution; (3) the plaintiff suffered a deprivation of liberty, apart from the initial arrest, as a result of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *France v. Lucas,* 836 F.3d 612, 625 (6th Cir. 2016). A plaintiff must satisfy all four elements.

**II.B.1. Favorable Termination**

Defendants argue that Ms. Gallagher's criminal prosecution "was not terminated in her favor" because it was dismissed without prejudice. (ECF No. 16, PageID #96.) Plaintiff argues that "federal law requires only that the criminal proceeding end[] without a conviction." (ECF No. 18, PageID #104.)

To demonstrate a favorable termination of a criminal prosecution for a malicious prosecution claim under Section 1983, "a plaintiff need only show that [her] prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022). A plaintiff does not need to show that "the criminal prosecution ended with some affirmative indication of innocence." *Thompson*, 596 U.S. at 48. Dismissal without prejudice qualifies as favorable termination under federal law. For this reason, the Court determines that Plaintiff's prosecution terminated in her favor. Accordingly, Plaintiff establishes this element of her federal claim for malicious prosecution.

**II.B.2. Probable Cause**

A finding of "an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of

holding the accused to answer." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006). While a grand jury indictment is presumed to prove probable cause, a plaintiff can rebut this presumption where the "indictment was obtained wrongfully by defendant police officers who knowingly presented false testimony to the grand jury" or where officers "testify with a reckless disregard for the truth." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014).

"It is not sufficient, even at the motion-to-dismiss stage, to make only vague and conclusory assertions without factual support." *Meeks v. Larsen*, 611 F. App'x. 277, 282 (6th Cir. 2015) (holding that a complaint asserting that the government caused a grand jury investigation by using "false and misleading information," without more specific facts, is insufficient to establish malicious prosecution). To rebut a presumption of probable cause, "a plaintiff must plead specific facts showing a defendant-officer made false statements or fabricated evidence that set the prosecution in motion." *Saal v. City of Wooster*, No. 5:18-cv-2744, 2020 WL 836498, at *4 (N.D. Ohio 2020) (determining that, where the plaintiff alleged that defendant-officers, "or someone at their direction, used [plaintiff's] OHLEG login information to perform searches of his living and deceased relatives," "[plaintiff] has pleaded sufficient facts to support a malicious prosecution claim under § 1983") (quoting *Allen v. Rucker*, 304 F. Supp. 3d 638, 643 (E.D. Ky. 2018)); *see also Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 910–11 (N.D. Ohio 2025) (determining that, at the motion to dismiss phase, plaintiff "plausibly alleged facts sufficient to rebut this presumption" because he alleged that the defendant-officers "fabricat[ed] [two

witnesses'] testimony and suppress[ed] evidence including the exculpatory non-identification of [him].").

Plaintiff does not dispute that a grand jury indicted her. (*See* ECF No. 18, PageID #104.) In fact, by arguing that she can rebut the indictment's presumption of probable cause, Plaintiff necessarily acknowledges that the indictment. Plaintiff maintains that this "presumption may be overcome where a plaintiff alleges that officers made false statements, fabricated evidence, or withheld material information." (*Id.*) Specifically, Plaintiff argues that she alleged that "Defendants prepared false and misleading reports and pursued charges to justify the use of force." (*Id.*)

Looking at the complaint, Plaintiff includes only two allegations that arguably relate to any false statements or fabricated evidence. First, "[t]he Defendant officers jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, misleading, incomplete versions of the events to their superiors in order to cover up their misconduct." (*See* ECF No. 1, ¶ 21, PageID #5.) Second, "[t]he policy, practice, and custom of a police code of silence results in police officers . . . remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have engaged in misconduct." (*Id.*, ¶ 49, PageID #9.) These allegations are conclusory, so the Court does not take them as true. Plaintiff fails to allege any detail about who made the false statements, which statements are false,

how the statements are false, or that such statements could have influenced the grand jury's decision to indict. Similarly, Plaintiff fails to allege who fabricated evidence, which evidence was fabricated, how the evidence was fabricated, or that such evidence could have influenced the grand jury indictment.

Further, Plaintiff's complaint includes only three allegations about Defendants' alleged conspiracy to prosecute her to justify their use of force. First, "for the purpose of covering up Jeffries'[s] excessive force, these Defendants acting individually, jointly, and in conspiracy with each other, instigated, influenced, or participated in the decision to prosecute [Plaintiff][.]" (*iI.*, ¶ 35, PageID #9.) Second, "the Defendant Officers, acting individually, jointly, and in conspiracy with each other, deliberately engaged in arbitrary conduct that contravened fundamental canons of decency and fairness and violated Plaintiff Emily's substantive due process rights under the Fourteenth Amendment." (*Id.*, ¶ 37, PageID #7.) Third, "Defendants acted with malice to initiate and/or maintain prosecution of Plaintiff without probable cause, causing Plaintiff to suffer a loss of liberty." (*Id.*, ¶ 56, PageID #10.) These allegations are also conclusory, so the Court does not take them as true either. Plaintiff fails to allege any detail about how Defendants conspired to prosecute her.

For these reasons, the Court determines that Plaintiff's complaint fails to rebut the presumption of probable cause. Accordingly, Plaintiff fails to establish the second element of her federal claim for malicious prosecution.

* * *

Because Plaintiff fails to rebut the presumption of probable cause that the indictment represents, she cannot satisfy all four elements for her claim for malicious

prosecution under Section 1983, and the Court need not consider the remaining elements. Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleadings on Plaintiff's federal claim for malicious prosecution.

**II.C. *Monell* Liability**

With respect to Plaintiff's *Monell* claim, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (2018). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson*, 753 F.3d at 622. The "conclusion that no officer-defendant has deprived the plaintiff of any constitutional right *a fortiori* defeats a claim against the government entity as well." *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799)) (cleaned up).

On its own motion, because Defendants are entitled to judgment on the pleadings on Plaintiff's federal claims for excessive force and malicious prosecution, the Court determines that Plaintiff cannot maintain a *Monell* claim. Therefore, the Court **DISMISSES** this claim.

**III. State-Law Claims**

Plaintiff brings four State-law claims for malicious prosecution, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. (ECF No. 1, PageID #10–13.) The Court has supplemental jurisdiction over

Plaintiff's State-law claims pursuant to 28 U.S.C. § 1367. Under federal law "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

Even then, a court "may decline to exercise supplemental jurisdiction" in certain circumstances. 28 U.S.C. § 1367(c). Supplemental jurisdiction "is a doctrine of discretion." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also James v. Hampton*, 592 F. App'x 449, 462–63 (6th Cir. 2015) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1882 (6th Cir. 1993)). Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Because the Court dismisses all of Plaintiff's federal claims, the Court may, in its discretion, either retain jurisdiction over Plaintiff's State-law claims and proceed

on the merits, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), or decline jurisdiction and dismiss the complaint without prejudice to Plaintiff's right to pursue the remaining claims in State court. *See* 28 U.S.C. § 1367(c)(3). "[G]enerally 'when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the [S]tate law claims." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Juergensen v. Midland Funding, LLC*, No. 5:18-cv-1825, 2018 WL 5923707, at *2 (N.D. Ohio Nov. 13, 2018).

Based on its review of the record, and because the case remains in its early stages, the Court declines to exercise its discretion to retain supplemental jurisdiction over Plaintiff's State-law claims. Therefore, the Court **DISMISSES** these claims **WITHOUT PREJUDICE**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for partial judgment on the pleadings on Plaintiff's federal claims for excessive force and malicious prosecution and, on its own motion, the Court **DISMISSES** Plaintiff's *Monell* claim. Further, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's State-law claims and **DISMISSES** them **WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated: August 25, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio